## Holdsworth *v.* Pennsylvania Power and Light Company, Appellant.

## Walt *v.* Pennsylvania Power and Light Company, Appellant.

Argued December 5, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Daniel L. McCarthy,* with him *A. W. Duy,* for appellant.

*R. S. Hemingway,* with him *James F. Brazell,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, January 2, 1940:

These two actions of trespass, tried together, to recover damages for personal injuries received by plaintiffs, in a collision between the automobile in which they were riding and another for the operation of which it is alleged defendant is responsible, resulted in verdicts for plaintiffs. Defendant moved for judgments notwithstanding the verdicts and for a new trial, which the court refused, and it brings these appeals.

The main question is a narrow one, whether the driver of the automobile, which was owned by him and not by defendant, was in such relation to the latter at the time and place of the collision as to make it responsible in damages for his negligent act.

These are the facts: Rahe, who owned and drove the car, was employed by defendant. He was an electrical worker, a wireman. On the day of the accident, he had driven from his home in Manchester, York County, to his work in Northumberland, arriving there about seven o'clock in the morning. The job on which he had been engaged was completed about 11:45 A. M. The foreman in charge of the work, who was Rahe's immediate superior, a witness called by plaintiffs, testified that when Rahe had completed his work, he was instructed to report at the construction office of defendant at Hazleton, some fifty miles away. The foreman knew Rahe had come to work that morning in his own car and that he would go to Hazleton in it. No instruction was given as to the way he was to proceed. The foreman saw him start. He further testified that Rahe and other employees were paid for the time they were travelling and were allowed three cents a mile for expenses, irrespective of how they were transported. He said the reason for telling Rahe to report to the Hazleton office was because he, the foreman, was not sure what job they would go to next. He said he exercised no control over the automobile. While proceeding on his way to Hazleton, Rahe negligently collided with the

car in which plaintiffs were riding, injuring them and killing himself. The evidence seems to indicate he had fallen asleep.

We then have this situation: A workman comes to work in his own car, finishes his work, is instructed by his foreman to report at the office of his employer to ascertain his next assignment of work, being paid for the time consumed in the journey and three cents a mile for expenses and while driving on a route of his own selection negligently brings his automobile into collision with another, injuring its occupants. Is his employer liable for the damage his careless driving caused? We think these circumstances not sufficient to fix liability on the employer. It certainly could not be successfully contended that if the instruction had been to report at the office the next morning, and the accident had occurred on the way to the office, the employer would have had to meet the damages, otherwise in every instance where an employee is going to his work in his own car on his employer's time, the latter would be held liable if the employee were negligent in driving his car. We fail to see how the fact that he was to go to his employer's office, after he had completed his work at Northumberland, on a route of his own selection, without more, can make a difference in the legal liability rule. Had he ridden in a bus and negligently injured another passenger or had ridden in another's car and negligently injured him, certainly his employer by no just rule could be required to respond. Had the distance been less and had he walked and negligently injured some one, the fact that he was walking to his employer's office would not visit the careless walking upon the latter. It was immaterial to defendant how he proceeded, whether in his own car, by bus or by train, the three cents a mile was contributed to cover the expense of travel, however it was accomplished.

Plaintiffs' able attorney endeavored to bring the cases within our ruling in *Cusick v. Hutchison*, 318 Pa. 316,

177 A. 749, but there the facts were markedly different. Evans, the servant, whose negligence was charged to his employer, had been hired to operate a steam roller in the construction of a highway which his employer was engaged in building. Evans came to his work in an automobile not belonging to his employer. While Evans was operating the roller, a stud pulled out of the main bearing. This put the machine out of commission and Evans told his foreman that in order to fix it, he would have to go to Scranton, seven miles distant, to get the part which the foreman directed him to do. There was no way of going to Scranton except by automobile. While driving to Scranton in his automobile, he injured the plaintiff in the suit. We held the employer liable, because at the time of the accident Evans was performing a service for him, saying (p. 318) that "Anderson, the foreman in charge, had supervisory authority over the continuance and completion of the work, . . . that Anderson had authority to take whatever steps were reasonably necessary to keep the roller in operation, in order to carry on the construction, and that it was therefore within his authority to authorize Evans's trip to Scranton for the new part. . . . the operation of the roller was an essential factor in the construction of the road, and . . . could not be used until a new part was obtained. . . . such a part could not have been procured at any nearer place than Scranton, and . . . the use of the automobile was the most reasonable way of getting there. . . . it was . . . Anderson's duty to have the machine repaired as promptly as possible after it broke down, and . . . his authorization of Evans's trip was a prudent exercise of that duty, . . . it was a fair inference that the roller had broken down completely, that its operation and consequently the continuance of the construction were wholly dependent upon the obtainment of a new part, and . . . under the circumstances the only reasonable way of obtaining it was for Evans to go to

Scranton for it in his automobile. In view of that fact, the express authorization of the trip by the foreman in charge, who was undoubtedly entitled to speak for the master in the latter's absence, could fairly be said to have been within his supervisory authority, and Evans's use of the automobile in accordance with that authorization might thus reasonably have been found to be within the scope of his employment." No such situation exists in the pending cases. Here Rahe's trip to Hazleton in his automobile was not vitally necessary to the continuance of defendant's business. Rahe could have gone to Hazleton by any method he chose, either by train, bus or in automobile of a fellow employee and his master's business would have been as effectively served. In the Cusick case, it was absolutely necessary to the continuance of the master's business that Evans go to Scranton in his automobile. The ruling in that case has no bearing on this one unless we are to extend the limits of employers' liability for employees' negligence while driving their own cars to boundaries never before deemed just or wise.

The principle which applies to this case is that laid down in *Wesolowski v. Hancock Ins. Co.*, 308 Pa. 117, 162 A. 166; *Heinrich v. Pictorial Review Co.*, 326 Pa. 470, 192 A. 645, and in *Gittleman v. The Hoover Co.*, 337 Pa. 242. In the former, we said (p. 120): "To hold a master legally responsible for the act of a servant who is engaged in furthering his master's business and who while doing so negligently uses some instrumentality that carries him from place to place, it must either be proved that the master exercises *actual or potential control* over that instrumentality, or the use of the instrumentality at the time and place of the act complained of must be of *such vital importance* in furthering the business of the master that the latter's actual or potential control of it at that time and place may reasonably be inferred." (Italics supplied.) In the course of the latter opinion, we said

(p. 244): "If, in the course of his work, an employee travels as a passenger in a train, trolley car or taxicab, he does not expose his employer to the risk of financial responsibility for accidents to other persons, and if the employee, merely for his own convenience, chooses to transport himself in his own automobile, his employer, who has not hired him to drive a car, should not be subjected to such potential liability. Therefore, unless the employee is *directed* by the employer *to use his car* for the purpose of traveling from place to place, or unless the circumstances are such that it is reasonably *necessary* for him so to travel instead of by train or other common carrier, the use of the car is not within the scope of the employment and the employer is not liable for injuries occasioned thereby to third persons." This ruling fits the present case as though made in it.

In Restatement, Agency, Sec. 239, the test is as follows: "A master is not liable for injuries caused by the negligence of a servant in the use of an instrumentality which is of a substantially different kind from that authorized as a means of performing the master's service, *or over the use of which it is understood that the master is to have no right of control. . . .*

"Comment: (b) The fact that the instrumentality used by the servant is not owned by the master is a fact which may indicate that the use of the instrumentality is not authorized, or if authorized, that its use is not within the scope of employment. The master may authorize the use of a particular instrumentality without assuming control over its use as a master. *The fact that he does not own it* or has not rented it upon such terms that he can direct the manner in which it may be used *indicates that the servant is to have a free hand in its use. If so, its control by the servant, although upon his master's business, is not within the scope of the employment. . . .*

"Illustration: 4. The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and street cars, A being permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment." (Italics supplied.)

Judgments reversed and here entered for defendant.