Opinion by
 

 Hirt, J.,
 

 Paul Owen was employed by defendant to demonstrate and to sell stainless steel cooking utensils. Defendant did not maintain a salesroom; the method of developing sales consisted in interesting householders in the equipment in their homes. Wherever possible Owen or the district manager, his immediate superior, arranged with a housewife to invite a number of her friends to her house for dinner. It was Owen’s duty on these occasions to supply the food and to prepare and cook the dinner in the defendant’s equipment and serve it with the help of a maid employed by him. Follow
 
 *228
 
 ing the dinner he delivered a “health lecture” to the group, stressing the merits of defendant’s product. He then took the names of all the guests and later called upon each of them in an effort to interest them in buying. Owen used his own automobile in going from one prospective purchaser to another. During the evening in question it was part of his assignment to call upon two women who had attended dinners where the equipment had been demonstrated. Their homes were some distance apart; one of them lived on Westview Avenue and the other in Roxborough. After making the first call, while driving to Roxborough, his automobile struck and injured both of the plaintiffs in the intersection of Pelham Road and Hortter Street in the City of Philadelphia. The verdicts in plaintiffs’ favor set at rest all questions of negligence and the only issue, raised by the refusal of the court to enter judgments for defendant n.o.v., is whether defendant employer is chargeable with the negligence of its servant Owen while operating his own automobile on the master’s business.
 

 This question is ruled by
 
 Wesolowski v. Hancock Ins. Co.,
 
 308 Pa. 117, 162 A. 166, consistently followed in the later cases, in which Mr. Justice Maxey thus stated the controlling principle: “To hold a master legally responsible for the act of a servant who is engaged in furthering his master’s business and who while doing so negligently uses some instrumentality that carries him from place to place, it must either be proved that the master exercises actual or potential control over that instrumentality, or the use of the instrumentality at the time and place of the act complained of must be of such vital importance in furthering the business of the master that the latter’s actual or potential control of it at that time and place may reasonably be inferred.”
 

 It is clear from the testimony that Owen’s agreement to supply his own automobile in the service of defendant was a condition precedent to his engagement
 
 *229
 
 as a salesman. He first learned of this opportunity for employment through defendant’s newspaper advertisement headed “Men With Cars,” stating: “We are ready to train five men only. Men with the following qualifications:
 
 must
 
 have car; twenty-five or over; married; good appearance; must talk well......” (Italics sup-lied.) When he applied for the job the first question asked was whether he owned an automobile. Moreover, the use of a car by a salesman was essential under defendant’s method of marketing its products. One could not demonstrate the equipment unless he had it with him and there were in all twenty utensils weighing 42 pounds. In conforming with defendant’s system, Owen could not operate effectively in a restricted territory and no particular district was assigned to him. The guests invited by a householder for a demonstration might come from anywhere in the Philadelphia district or the neighboring area and it was Owen’s duty to call upon them wherever they lived. On the occasions of a demonstration dinner, in addition to the cooking utensils Owen was obliged to carry the necessary foodstuffs and to bring a maid with him to assist in the demonstration. Because of the weight of the equipment and the distances between calls, it is idle to argue that it was a matter of indifference to defendant whether Owen used his own automobile or went about on foot. Some means of transportation was essential. Defendant selected Owen’s automobile as the means and his agreement to supply it was a prerequisite to his employment. The commissions which defendant paid Owen was compensation to him not only for his services but for the use of his automobile as well. It is unimportant, therefore, that the written contract of employment makes no reference to Owen’s automobile or that the contract seeks to characterize Owen as an independent contractor. It provides: “that the direction and control reserved by the company shall extend only to the results sought to be accomplished under this con
 
 *230
 
 tract.” But in the same paragraph it is stated: “The Salesman agrees to send in reports each week in the form provided by the Company and to carry out his obligations
 
 under the direction and control of the Company or any of its authorized representatives
 
 it being understood that
 
 failure to do so gives the Company the right to cancel this contract.”
 
 (Italics! supplied.)
 

 Defendant recognized the status of Owen as an employee by deductions from his commissions for Social Security payments. In practice the company was as much concerned with the manner of the performance of Owen’s duties as it was with the result of his work. He was obliged to report to defendant’s district manager every morning for instructions and was bound to submit to his direction and control; the right to discharge Owen gave defendant the means of enforcing this provision of the contract. At the time of plaintiffs’. injuries Owen had made one call and was on his way to another, both at the direction of the district manager. Owen then was acting within the scope of his employment and by requiring him to supply the car for this very purpose, defendant cannot now say that the automobile was not necessary in the furtherance, of its business. It follows.that in directing Owen to make specific sales calls, defendant exercised at least “potential control” over the means of transportation and therefore is liable for damages resulting from the negligent operation of the instrumentality.
 
 Cusick et ux. v. Hutchison,
 
 318 Pa. 316, 177 A. 749.
 

 In these respects the present case differs from those relied upon by defendant
 
 [1]
 
 where the use of the instrumentality was a matter of indifference to the employer,
 
 *231
 
 or its use was not reasonably necessary to the furtherance of the business of the master and was not controlled by him.
 

 Judgments affirmed.
 

 [1]
 

 Holdsworth, v. Penna. P. & L. Co.
 
 337 Pa. 235, 10 A. 2d 412;
 
 Gittelman v. Hoover Co.,
 
 337 Pa. 242, 10 A. 2d 411;
 
 Barr v. Anchorage Inn, Inc.,
 
 328 Pa. 378, 196 A. 21;
 
 Heinrich v. Pict. Rev. Co. Inc.,
 
 326 Pa, 470, 192 A. 645;
 
 Rankin v. Royal Mfg. Co,,
 
 25 F. Supp. 548,