JOHN EDWARD WELCH, Plaintiff and Respondent, v.
BRUCE THOMPSON and HAGGERTY-MESSMER CO.,
a Corporation, Defendants and Appellants.

No. 10745
Submitted November 5, 1964. Decided March 3, 1965.
399 P.2d 748.

Lyman H. Bennett, Jr. (argued), Bozeman, Berg, O'Connell & Angel, Bozeman, Charles F. Angel (argued), Bozeman, for appellant.

Landoe & Gary, Bozeman, Hjalmar B. Landoe (argued), Bozeman, Gene I. Brown (argued), Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered on a jury verdict against the defendants in the amount of $61,500. The action arose out of a collision between an automobile driven by defendant Thompson and a jeep station wagon pulling a horse trailer loaded with two horses, driven by plaintiff Welch.

The accident occurred in the afternoon on September 27, 1961, on U. S. Highway No. 10, approximately four miles east of Bozeman. Both Welch and Thompson were proceeding easterly from Bozeman. Welch was going to the Shuey residence where he was going to leave his horses, and was turning left off Highway 10 into the farm road. Thompson was in the act of passing Welch and struck the Welch vehicle.

For clarity sake, and in an effort to relate the facts to the arguments of the parties, we shall elaborate on the facts in three categories: (1) those relating to fault or liability; (2) those relating to the scope of employment of the defendant Thompson as related to the defendant Haggerty-Messmer; and (3) those relating to damages.

Both defendants are appellants here, with a difference in whether Thompson was acting in the scope of his employment being substantially the only difference on appeal.

The appellant Thompson has set forth ten specifications of error, and the appellant Haggerty-Messmer has set forth eleven specifications. Some of the specifications are identical, some based upon instructions, and some on the separate appeals. But, essentially they all relate to the three categories set forth above. We shall discuss first those relating to fault or liability.

As to fault or liability, appellants put forth their argument under motion for directed verdict, motion for new trial and burden of proof. Under this latter matter several instructions are referred to as being in error or, as the error certain instructions not having been given.

To put it even more plainly, appellants assert that under the evidence, Thompson was not negligent; and further, that Welch was guilty of contributory negligence in such a manner as to preclude him from recovery, and that thus it was error to allow the jury to determine the issue.

Welch was driving east on Highway 10 in clear weather on a dry road, pulling a horse trailer. He was followed by one Charles Waterman. As Welch approached a driveway or farm road to the Shuey residence, where he was destined, he slowed, and according to his testimony commenced signaling for a left turn both with indicator lights on his jeep and trailer and also an arm signal. One Clarence Hanshaw was approaching from the east; he saw Welch signaling a left turn, as he stated, about 300 or 400 feet before the driveway turn. He, Hanshaw, saw too, two vehicles pass Welch headed east. Because of the signaled intention of Welch to turn left, and because of his fear of a collision between himself and the two vehicles in the act of passing Welch, he stopped. At this point he saw Waterman's vehicle and the Welch vehicle. Suddenly, according to both Hanshaw and Waterman, the defendant Thompson's auto, at what was described as a "terrific" rate of speed by Hanshaw and "70 miles per hour" by Waterman, came around to the left lane to pass the auto of Waterman,

continued on to pass the jeep and trailer of Welch; and, as Welch turned left collided with Welch's jeep with such force that the jeep and horse trailer were turned completely in a 180-degree circle, overturning the trailer with the two horses in it. Thompson's auto left 110 feet of skid marks before the collision and after the collision continued on down the borrow pit some 100 to 150 feet before coming to rest. It is true that some of the foregoing evidentiary matters are disputed, but as we will discuss later our review is to determine whether the evidence, if believed, was substantial.

Th highway where the mishap occurred was in what is described as a "construction area", although at the particular scene and on to the west to Bozeman there was in fact no construction. There were, however, warning signs to the west, a warning of highway construction, a warning of caution and a warning to drive slowly. These signs had been placed by the contractor, and the defendant Thompson was familiar with the construction zone, having been through it many times.

As to the defendant Thompson, he was an employee of Haggerty-Messmer on September 27, 1961, the day of the accident; and had been so employed for about three and one-half years. On that morning he went to work at a project on "Sourdough" pouring a concrete driveway. That job was completed in the afternoon. There were three other employees of Haggerty-Messmer on the Sourdough job, John Collins, Bill Townsend and George Meyers. James Messmer, a superintendent of Haggerty-Messmer, told defendant Thompson, according to Thompson's testimony, to proceed to another project at the Goodfellow's Camp in his own auto. According to James Messmer's version, he, Messmer, told the defendant Thompson and the other three employees that if they would like to finish the day out, they could, at their option, report to the Goodfellow job. Messmer proceeded in a company pickup truck to the Goodfellow job, which was enroute but east of what we have hereinbefore described as the accident scene. Collins, another

employee, followed in his own vehicle and defendant Thompson followed Collins in his, Thompson's own auto.

According to Messmer's version, these matters appear. Messmer, in the pickup truck, passed plaintiff Welch and witness Waterman just prior to the accident at what was described as a high rate of speed and which Messmer said was 65 miles per hour. Another auto, probably Collins, following the pickup, also passed. This is said by appellants to be a fact not proven since no exact identity of Collins' auto was ever made, but a reading of the evidence leaves one with the firm conclusion that it was Collins' car and that Messmer, Collins and defendant Thompson, each with the same departure and destination, were following one another, as it was Collins who arrived behind Messmer and told Messmer that he thought Thompson had had an accident.

Messmer also explained that, Thompson not arriving at the job, he, Messmer, went back, and there saw the accident scene. According to Welch, Messmer talked with Welch accusing him of "trying to kill [Thompson]". Messmer denied having made the statement, but at any rate it is clear that *Messmer expected Thompson* to arrive behind him very shortly at the Goodfellow job and when he failed to arrive and when Collins arrived and told him he, Collins, thought Thompson had been in an accident, Messmer went back to find him. Thompson, following the accident, finally did work close to an hour on the new job. He was paid for a full eight hour shift. He also made claim and was paid for an Industrial Accident arising out of the accident.

From this previous summary of long, detailed testimony of numerous witnesses, we believe sufficient facts appear to answer the first grouping of claimed errors.

■ Appellant urges that he was not shown to be negligent because he claims the pleading and evidence of high speed in a construction zone is not evidence going to his negligence. He reasons that since the area was not technically limited by law

as to his speed, that even his knowledge of the area, the warning signs, and the attempt at passing a turning vehicle, if the evidence be believed, were not sufficient to allow the case to go to the jury. We feel the very statement of the proposition answers itself, but to indicate further the care taken by the trial court to fairly present the matter to the jury we will quote several instructions given. We first observe that the defendants' version or theory of their defense was given in instructions.

The trial court gave 31 instructions to the jury. In Instruction 1, part 17, the court instructed on the burden of proof as follows:

"In a civil action such as the one we are now trying, the party who asserts the affirmative of an issue must carry the burden of proving it. In other words, the 'burden of proof' as to that issue is on that party. This means that if no evidence were given on either side of such issue, your finding as to it would have to be against that party. When the evidence is contradictory, the decision must be made according to the preponderance of evidence, by which is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. Should the conflicting evidence be evenly balanced in your minds, so that you are unable to say that the evidence on either side of the issue preponderates, then your finding must be against the party carrying the burden of proof, namely, the one who asserts the affirmative of the issue."

An examination of that instruction shows the party who has asserted the affirmative of the issue must carry the burden of proving it. Consider this instruction in connection with Instruction 8. The theory of the plaintiff's case is clearly set forth and states what the plaintiff alleges as an affirmative of the issue, and the defense of the defendants, including contributory negligence are given to the jury. Instruction 8 states as follows:

"You are instructed that the following is a statement of the case: The plaintiff in this action, John Edward Welch, has alleged that on September 27, 1961, on U. S. Highway No. 10, approximately four miles east of Bozeman, Montana, the plaintiff was driving a Jeep automobile, pulling a horsetrailer, and that he was intending to and attempting to turn north across the highway and onto a road leading to a farm house. Plaintiff alleges that he had signaled his intention to turn with signal lights and hand signal for over 200 feet before attempting to make the left-hand turn, and that the defendant, Bruce Thompson, who was driving in the same direction, was driving at an excessive rate of speed; that he failed to keep a proper look-out, he failed to heed the signal given by the plaintiff, and drove his automobile in violation of the speed limit, and that he failed to keep his automobile under control, and that as a proximate result of one or more of these acts, the plaintiff's vehicle was struck by the vehicle of the defendant, and the plaintiff was injured.

"The plaintiff further alleges that at the time of the collision, the defendant, Bruce Thompson, was an employee of Haggerty-Messmer Company, a co-partnership and that he was acting within the scope of his employment at the time of the collision.

"The plaintiff further alleges that as a proximate result of the negligence of the defendants, that he has suffered injuries to his lower spine and to his entire body and has incurred medical expenses in the past and will incur medical expenses in the future and that the plaintiff will require future medical care and surgery and that the plaintiff has experienced great pain and suffering in the past and will experience the same in the future, and that the plaintiff is permanently disabled so that he cannot be gainfully employed, and that he has suffered loss of income from 1961 until age 65 in the sum of $106,000.00; plaintiff further alleges that he has suffered pain and suffering in the past and future and that he

76

has been damaged in that respect in the sum of $50,000.00 and that his medical expenses in the future will be $5,000.00, and it is alleged that he has expended for medical expenses in the past sums of approximately $300.00. Plaintiff alleges that the defendants' negligence is the proximate cause of these damages.

"The defendants, Bruce Thompson and Haggerty-Messmer Company, deny that the defendant, Bruce Thompson, was negligent in any manner whatsoever and both defendants deny that the plaintiff was injured as a result of the collision in question on September 27, 1961, and the defendants both allege that the plaintiff was guilty of contributory negligence in failing to give a proper signal of his intention to make a left-hand turn for at least 100 feet before attempting to make a left-hand turn, and that the plaintiff was further negligent in failing to keep a proper lookout to ascertain the position and presence of the defendant, Bruce Thompson, when Bruce Thompson was passing him.

"The defendant, Haggerty-Messmer Company, further alleges that Bruce Thompson was not acting within the scope or course of his employment at the time of the collision in question."

Other instructions even more fully set forth the issues, but we shall not further burden this opinion with their quotation. In the light of what we have already stated, we find no merit in the first grouping of errors. While we have some difficulty separating the contentions of the appellants, the gist of their combined assertions on this grouping of errors is that by the plaintiff's own case he has shown himself to be contributorily negligent as a matter of law. We do not so find. (See Holland v. Konda, 142 Mont. 536, 385 P.2d 272.)

As to the second, the scope of employment of the defendant Thompson, the facts and part of the applicable instructions have hereinbefore been set forth in part: The trial court instructed the jury that Thompson was an agent of Haggerty-

Messmer and acting within the scope and course of his employment. The error claimed is the trial court's finding as a matter of law on the agency matter.

As put forth by the appellant Haggerty-Messmer its two contentions are:

(1) Its motion for a directed verdict after all evidence had been introduced, should have been granted because the evidence, no matter how it is viewed, shows affirmatively and without dispute, that, although defendant was an employee of the company, he was not acting within the scope of his employment at the time and place of the accident in question; and,

(2) In any event, whether or not defendant was acting within the scope of his employment by the Company at the time of the accident in question was a question of fact which should have been submitted to the jury under proper instructions.

Reviewing briefly the uncontroverted facts: Thompson was in the general employment of Haggerty-Messmer; he was directed to the new work site by the Company foreman, and he was paid for the time taken on the trip; the trip was during normal working hours and was for the benefit of the employer; and the foreman knew Thompson was driving his own auto, knew he was following him, and expected him to arrive.

In Webster v. Mountain States Tel. & Tel Co., 108 Mont. 188, 89 P.2d 602, this court ruled in an action to recover for personal injuries by a plaintiff struck by an auto owned and operated by one Morrison. Morrison was an employee of the defendant Company as a lineman, and upon finishing work in Roundup on Friday afternoon, he was ordered to report in Miles City for work on Monday. He drove his own auto, even though the Company supplied a truck for his transportation. The Company knew he used his own auto and impliedly consented. The accident occurred Friday afternoon, and he was

paid his usual wages. He was required to move frequently from place to place. In that case the Company made motions for nonsuit and directed verdict, but on appeal the court held that the case had been properly submitted to the jury. As to the control of the employer over its employee and the implied consent to use a private vehicle, that case is similar to this instant case. The appellant Company here stresses as differences the facts that the employee in the Webster case travelled frequently from place to place and that transportation was part of the employer's business. We do not see how either or both differences have an important bearing since, in the instant case it is clear that the Company foreman authorized Thompson's mode and manner of travel to the Goodfellow job.

Appellant would also urge the Pennsylvania cases of Holdsworth v. Pennsylvania Power & Light Co., 337 Pa. 235, 10 A.2d 412 and Gozdnovic v. Pleasant Hills Realty Co., 357 Pa. 23, 53 A.2d 73, as controlling. In those cases the Pennsylvania Court stressed what that court referred to as "vital importance" or "reasonable necessity" as being criteria for determining the scope of employment.

However, in the Webster case, at p. 199 of 108 Mont., p. 604 of 89 P.2d this court said:

"Hence, the fact that Morrison was partially serving his own purpose in transporting his family with him, does not preclude recovery against the defendant company. The test to be applied, is well-stated by Chief Justice Cardozo speaking for the court in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183, where he said: 'The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the

private purpose, though the business errand was undone, the travel is then personal, and personal the risk.'

"Morrison's work was of the character that required frequent traveling from place to place. The customary use of his own car with the knowledge of his superiors must be held to have also been with the company's consent and at least implied authority. The fact that the employer furnished a truck with which to transport its employees does not relieve if of responsibility where, as here, it impliedly authorized its employee to use his own car. The fact that the employer furnished a truck for that purpose is proof of the fact that the matter of transporting its employees was part of the business of the employer. Compare, Restatement Agency, sec. 229, illustration 13. Additionally, Morrison in making the trip to Miles City was acting in obedience to the command of the defendant company to report there for duty. Where, as here, it authorized the employee to use his own car for the purpose of transporting himself, the employee in so doing was acting within the scope of the business of the employer. The rule is well established by the great weight of authority that the servant's negligent use of his own car in the service of the employer, by the express or implied authorization of the employer, renders the employer liable for injuries sustained by a third person as a result thereof. See Note in 87 A.L.R. 787, 57 A.L.R. 739, and 112 A.L.R. 920." (See cases collected and discussed in 52 A.L.R.2d beginning at page 325.)

In the instant case, even though the appellant Company urges the "option" of Thompson to report or not report to the Goodfellow job, it is clear that Thompson exercised the option when he left the Sourdough location and travelled in what respondent describes as a more or less caravan style. Thompson was, from all of the evidence, under the supervision and control of the employer at the time of the accident, and the trial court was correct in ruling so as a matter of law.

The final grouping of alleged error concerns damages, but

since neither the briefs nor argument actually makes any argument nor cites any authority, we shall not dwell on them: We have examined all of the specifications of error and find no prejudicial error. Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, DOYLE and ADAIR concur.