EARL J. FOWLER, Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant.

No. 11433.
Submitted April 16, 1969.
Decided May 8, 1969.
454 P.2d 76.

McKeon & Brolin, John L. McKeon (argued), Anaconda, for appellant.

John A. Alexander (argued), George W. Richardson (argued), Butte, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This case involves the liability of an insurer in excess of its

policy limits for failure to accept a settlement offer within those limits. The appeal is from a judgment entered on a jury verdict in the amount of $4,000 plus an attorney fee of $750.

Earl J. Fowler, the plaintiff, on August 25, 1962, was involved in an accident in Butte, wherein an automobile he was driving struck and injured a pedestrian, one Charles Nau, at or near an intersection of Wyoming and Broadway streets. Fowler was insured with the defendant, State Farm Mutual Automobile Insurance Company, hereinafter referred to as State Farm, under an automobile liability policy which provided coverage up to a limit of $10,000. Under the policy State Farm was obligated to:

"* * * pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons * * * and to defend any suit against the insured alleging such bodily injury * * * but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

Nau was taken to a hospital and immediately dismissed, incurring special damages in a minimal amount. Subsequently Nau obtained counsel and instituted a suit for damages against Fowler, praying for damages in the amount of $25,000, later amended to $40,000. The case went to trial, and a jury verdict in the amount of $20,126.80 was returned with judgment entered thereon.

State Farm paid Nau the sum of $10,677.44 obtaining a partial satisfaction of the judgment. Nau pressed Fowler for the excess. Fowler eventually compromised the remaining portion of the judgment, paying Nau the sum of $4,000.

Fowler instituted this action seeking to recover the money paid Nau and to recover attorney fees. The basis for the suit to recover the excess amount of the judgment was set forth in the complaint thusly:

"That defendant was negligent in the performance of the

duties which it assumed and wholly failed in the diligent performance thereof in that: It failed to make timely and proper investigations of the circumstances of the said accident and the alleged injuries resulting therefrom; failed to present competent and material evidence at the trial of the said lawsuit, which was known, accessible and available to defendant, or with reasonable diligence could have been so known, accessible and available; failed to conduct negotiations for settlement by way of compromise with reasonable skill and diligence; failed to report to plaintiff offers for settlement made by attorneys for the said Charle Nau; and failed to effect compromise of said claim in good faith; whereby said claim could have been settled within the limits of the said insurance contract.  *  *  *

"That the plaintiff did make written demand upon the defendant to settle the claim of the said Charles Nau, within the limits of said insurance contract; that defendant did fail to so settle the claim although it had opportunity to do so, and did thereby fail to exercise good faith as regards the interest of the plaintiff."

In an interrogatory, plaintiff listed the acts or omissions of defendant as follows:

"(a) Failure to produce witnesses to show that Nau had recovered, was working in Butte and other places immediately after accident.

"(b) Failure to have a medical examination made on Nau until a few days before trial, although permission had been given to take medical exam on or about April 3, 1964.

"(c) Failure to settle with policy limits, upon demand of Fowler, although opportunity to do so was present.

"(d) Misrepresentation of State Farm in advising its attorney and Fowler that it had witnesses to prove only minimal injuries to Nau.

"(e) Failure to determine probability of Fowler's contention that Nau came out of the side door of the Finlen Hotel, on Wyoming Street, and crossed the street south of the crosswalk."

In the original suit of Nau v. Fowler, where judgment for $20,126.80 was entered, no appeal was taken; subsequently the court reporter died and no transcript of the testimony could be had. Thus, all the testimony in the instant action concerning the accident and injuries was brought out on recollection of various witnesses.

As to liability of Fowler in the accident, Fowler contended throughout that he did not hit Nau in the crosswalk, but rather below it. However, statements taken shortly after the accident indicated that at least there was conflicting versions of where Fowler struck Nau and thus whether Fowler was liable.

There were no eyewitnesses other than Nau and Fowler to the accident. A police report of the incident was obtained. Statements of Fowler, Nau, Virginia George, a hotel clerk, and others were obtained. Nau contended that he was struck in the crosswalk while Fowler contended throughout that Nau was, in effect, jaywalking. The police report, while indicating Nau was struck in the crosswalk, did not result in any charges against Fowler, not even reckless driving.

As to the injuries, although physical injuries might be termed minimal, Nau made serious complaints of mental disorders which he attributed to the accident. His prayer for damages was amended from $25,000 to $40,000.

State Farm conducted an extensive investigation both in Montana and Indiana, Nau's home, but no witnesses were uncovered who, in their judgment, might aid Fowler's case. Three days before trial State Farm's attorneys had Nau examined by a pschiatrist. It was clear that Nau suffered a mental disorder, but whether or not it was caused by the accident was not clear.

As to settlement negotiations, it appears Nau's counsel had inquired about settlement possibilities. Prior to the filing of the complaint, State Farm's attorneys had offered the sum of $2,500. Nau's attorney offered to settle for $7,500. No agreement was reached and the case went to trial. No offer was made after the suit was filed. The testimony of the attorneys involved

revealed some conversation about settlement during the trial but no offers as such.

On April 8, 1964, Fowler, through his privately retained attorney, wrote State Farm demanding that it settle within policy limits. On April 22, 1964, State Farm replied:

"The only demand that we have received thus far from Mr. Nau's attorney is for $7,500.00. This demand, on the face of it is excessive. Neither the facts of the accident nor the injuries bear out such a demand by Mr. Nau or his attorney."

On this appeal defendant-appellant sets forth the issues in nine specifications of error. Both briefs have intertwined discussion and argument into two basic issues which we state as follows:

1. Was proof made of either negligence or bad faith?
2. Were the instructions proper?

Before considering the first issue, we shall discuss the basis of liability in cases where a judgment exceeds policy limits. Extensive annotations in 40 ALR2d 168 and ALR2d Later Case Service 4, p. 649, cover a wide variety of cases. We think that excellent discussions of the applicable law appear in three reported cases arising in Montana: Fetter Livestock Co. v. National Farmers U. P. & C. Co., 257 F.Supp. 4; Jessen v. O'Daniel, 210 F.Supp. 317; and National Farmers Union Property & Casualty Co. v. O'Daniel, 329 F.2d 60.

In Fetter Livestock Co. v. National Farmers U. P. & C. Co., supra, 257 F.Supp. at p. 10, Judge Jameson discussed the applicable rules as follows:

"Both this court and the Court of Appeals for the Ninth Circuit passed upon questions relating to recovery for bad faith in the failure of an insurer to settle within the policy limits in Jessen v. O'Daniel, D.Mont. 1962, 210 F.Supp. 317, aff'd National Farmers Union Property & Casualty Co. v. O'Daniel, 9 Cir. 1964, 329 F.2d 60. Counsel for defendant make no reference to either case in a rather exhaustive post-trial brief, but cite numerous cases from other jurisdictions, both federal

and state. In turn counsel for plaintiff analyze and distinguish many of those cases, and cite others in support of their contentions. I see no reason to discuss these cases. In my opinion the applicable rules in this jurisdiction are set forth in Jessen v. O'Daniel, supra, and National Farmers, etc. v. O'Daniel, supra, and the cases there cited. It is clear that each case must be decided on its own particular facts.

"It is well settled that 'Error in judgment in not settling a case within the policy limits is not in itself sufficient to impose liability upon the insurer for any recovery in excess of the limits; nor is the mere fact that the insurer was unsuccessful in the trial of the case sufficient to show that the defense was not made in good faith.' Jessen v. O'Daniel, supra. (210 F. Supp. at 325.) On the other hand, 'It has been held that a policy of this type places a fiduciary duty on the insurance company to look after the interests of the insured as well as its own, thus requiring it to consider fairly the insured's liability for the excess when evaluating an offer of settlement within the policy limits. Failure to do so is bad faith and renders the company liable for its breach of fiduciary duty in the amount of any judgment over the policy limits.' National Farmers Union Property & Casualty Co. v. O'Daniel, supra. (329 F.2d at 64-65.)

"In Jessen v. O'Daniel this court set forth relevant factors for determining whether an insurer acts in 'bad faith' as follows:

"Factors to be considered include (1) whether, by reason of the severity of the plaintiff's injuries, any verdict is likely to be greatly in excess of the policy limits; (2) whether the facts in the case indicate that a defendant's verdict on the issue of liability is doubtful; (3) whether the company has given due regard to the recommendations of its trial counsel; (4) whether the insured has been informed of all settlement demands and offers; (5) whether the insured has demanded that the insurer settle within the policy limits; (6) whether the company has

given due consideration to any offer of contribution made by the insured. As a rule no one factor is decisive. All must be considered in determining whether the insurer acted in good faith.' (210 F.Supp. at 326-327).

"Factors (3), (4) and (6) are not present in this case. It is clear that National gave due regard to the recommendation of its counsel and followed that recommendation. The insured and its counsel were kept fully informed. No offer of contribution was made by the insured. Factors (1), (2) and (5) must be considered in determining whether National acting through its claim manager and its local counsel breached its fiduciary duty to its insured and was guilty of bad faith in failing to settle for Vogel's demand of $43,000."

Without going into great detail in setting forth the evidence, only element No. 5, that is, that Fowler demanded that State Farm settle, is clearly present. And, even here, Fowler's only stated reason was "I thought it would be a pretty good idea." State Farm's counsel were praised by Fowler. Even though Fowler consulted his own lawyer to draw the demand letter, not once did anyone inspect the State Farm file, although it was available. Very clearly, none of the issues of negligence or bad faith framed by the complaint were proven.

Plaintiff-repondent Fowler in this case relies on Crisci v. Security Insurance Co. of New Haven, Conn., 66 Cal.2d 425, 58 Cal.Rpts. 13, P.2d 173, and quotes extensively from Vol. 32, Journal of the American Trial Lawyers Association to the effect that the courts should adopt a theory of strict liability; also from Vol. 32, pp. 350, 355 to the effect that the Crisci case is a "landmark decision * * * destined to make recalcitrant carriers rue their policy limits and to gamble with the interests of their insureds * * *".

To the extent that the Crisci case is viewed as abandoning any requirement of proof of bad faith, we would reject it; but it does not go so far. We believe the California court uses the

criteria previously discussed by Judge Jameson in the Fetter case.

Applying the sixfold factors from Fetter briefly to the facts here, reveals:

(1) There was no proof of a likelihood that a verdict greatly in excess of policy limits would occur because of the injuries. As stated before the physical injuries produced special damages of a minimal amount. Nau lost no work after the accident; and the mental disorder, although real, was not so clearly caused by the accident as to indicate a likelihood of a greatly excess verdict.

(2) The issue of liability was doubtful to the extent that the insured, Fowler, consistently denied hitting Nau in a crosswalk. Fowler was not charged with any driving violation.

(3) The company gave every regard to the recommendations of trial counsel. Fowler testified as to the cooperation of trial counsel. He stated that counsel ''treated me swell'' and, ''they handled the case very well, swell attorneys, both of them'' and, ''They were wonderful.'' Also in this regard, a factor not previously set out is unique. It was shown that the trial judge indicated to Nau's counsel that he should accept the $2,500 settlement offer and it was a mistake for counsel not to have accepted it. This was prior to verdict. Thus it appears that even the judge was surprised at the verdict.

(4) The insured was informed of all settlement offers. As stated before, there was conversation between counsel that was not communicated to him; but no offers as such.

(5) As related before, the insured did demand that the insurer settle within policy limits for the stated reason of a ''good idea''. Insured did not hire counsel of his own except to draft such a demand. Insured never inspected the files and never indicated anything except that he was not negligent.

(6) There were never any offers of contribution or even a consideration of such.

Taking the evidence presented as a whole, there was a total

lack of proof of any bad faith or even anything amounting to negligence sufficient to show a lack of good faith. The trial court should not have submitted the matter to the jury and should have granted the motion for a directed verdict.

We need not discuss issue No. 2 as it concerns instructions to the jury.

For the foregoing reasons the judgment is reversed and the case dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, JOHN C. HARRISON and BONNER concur.