No. 12041

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

BRUCE THOMPSON,

Plaintiff and Respondent,

-vs-

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,

Defendant and Appellant.

---

Appeal from:    District Court of the Eighteenth  Judicial District,
                Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        McKeon, McKeon and Skakles, Anaconda, Montana.
        John L. McKeon and Gregory J. Skakles argued,
        Anaconda, Montana.

    For Respondent:

        Morrow, Nash and Sedivy, Bozeman, Montana.
        Edmund P. Sedivy argued and James H. Morrow appeared,
        Bozeman, Montana.

---

                                Submitted:  December 5, 1972

                                Decided: JAN 1 7 1973

Filed: JAN 1 7 1973

Thomas J. Kearney
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This cause was heard on oral argument on April 24, 1972. An opinion was rendered on August 23, 1972 and appears in 29 St. Rep. 713. Subsequently a petition for rehearing was granted, and the matter was again argued on December 5, 1972. After rehearing the following opinion is substituted for the opinion rendered on Agust 23, 1972.

This is an appeal from a judgment for plaintiff in the amount of $76,830.03 entered on a jury verdict in Gallatin County, the Honorable Jack D. Shanstrom, presiding. Defendant moved for judgment notwithstanding the verdict and for a new trial. Both motions were denied.

This case, in other facets, has been before this Court previously. Welch v. Thompson, 145 Mont. 69, 399 P.2d 748; St. Paul Fire & Marine Ins. Co. v. Thompson, 150 Mont. 182, 433 P.2d 795; St. Paul Fire & Marine Ins. Co. v. Thompson, 152 Mont. 396, 451 P.2d 98.

Plaintiff brought the instant suit against defendant alleging bad faith in defendant's handling of a tort action.

On September 27, 1961, plaintiff Bruce Thompson was the driver of an automobile owned by his father and insured by defendant State Farm Mutual Automobile Insurance Company. Plaintiff was then 20 years of age, single, and working as a laborer for Haggerty-Messmer Co. in Bozeman. While in the course of his employment (an issue in previous cases decided by this Court), plaintiff traveling between jobs attempted to pass a jeep pulling a loaded horse trailer, driven by one Welch. Welch was making a left turn off a highway in a construction zone when plaintiff Thompson collided with him while attempting to pass.

Welch employed attorneys Landoe and Gary of Bozeman, and filed suit for damages in the amount of $134,000 on August 2, 1962, alleging negligence on the part of Thompson. Thompson appeared by motion to dismiss which motion was heard and denied on October 22,

1962. Subsequently after certain discovery proceedings, Thompson's employer, Haggerty-Messmer, was joined as a defendant and the addendum in the amended complaint was increased to $160,000. Thompson answered separately and filed a counterclaim against Welch for $25,000 damages. At that time, Thompson was represented by two law firms, Morrow, Nash & Sedivy, and Lyman Bennett, Jr. Mr. Nash acted as attorney for Thompson on his counterclaim.

Haggerty-Messmer was represented by still another law firm, Berg, O'Connell & Angel. Haggerty-Messmer appeared separately by a motion to dismiss which was denied and then by a separate answer.

Meantime, Thompson's attorney, Donald A. Nash, withdrew as attorney for Thompson on his counterclaim and a praecipe for dismissal of the counterclaim resulted in dismissal of the counterclaim.

Pretrial was had on April 6, 1963. Trial was had and a jury verdict was returned in favor of plaintiff with judgment in the amount of $61,500. This judgment was appealed to this Court and affirmed on March 3, 1965.

State Farm paid $11,204.64 and St. Paul Fire & Marine, carrier for Haggerty-Messmer, paid the balance.

In our opinion affirming that judgment, Welch v. Thompson, 145 Mont. 69, 72, 399 P.2d 748, one significant statement was made there that is pertinent here. After setting forth the details of the accident, this Court observed:

> "It is true that some of the foregoing evidentiary matters are disputed, but as we will discuss later our review is to determine whether the evidence, if believed, was substantial."

On March 2, 1966, St. Paul, as subrogee of Haggerty-Messmer, sued Thompson for $57,240.61 for indemnity. Thompson notified State Farm and requested State Farm to defend him. State Farm did commence to defend Thompson by a motion to dismiss, which motion was subsequently overruled. Shortly thereafter, State

Farm advised Thompson that it would not further defend him. Thompson then, through his own attorney, filed a third party complaint against State Farm seeking damages for the insurer's breach of contract to defend the suit and for $2,500 attorney fees. A summary judgment for $2,500 was entered against State Farm. State Farm appealed and numerous issues were stated but finally resolved to one issue: Whether State Farm had a duty to defend the action for indemnity between joint tortfeasors (the employer being liable under the doctrine of respondeat superior)? We held that State Farm had the duty to defend and affirmed the judgment. St. Paul Fire & Marine Ins. Co. v. Thompson, 150 Mont. 182, 188, 433 P.2d 795. There we said:

> "We find then that the obligation to defend does exist. But, State Farm argues that it should be allowed to defend rather than paying counsel to defend the action. There can be no question of the good faith and sincere defense by counsel for State Farm in the Welch suit nor here. However, the inconsistent and yes, antagonistic positions that have developed make it clear that Thompson was required to hire his own counsel. No issue as to the amount of damages is involved.

> "But one more matter needs discussion. Subsequent to the oral argument and predicated upon the fact that State Farm, as appellant, abandoned several of the issues on appeal, leaving in effect Thompson as the sole respondent, St. Paul has filed a motion for damages for appeal without merit. We believe our discussion previously indicates that St. Paul might have litigated the issue of indemnity in the previous action, but chose not to because of an inconsistent position. Even though St. Paul now has the favorable position of being 'let-out' on issues on appeal, nonetheless it is very much a part of the issue. We have no doubt, for that matter, that it likely would have appeared as amicus curiae. Additionally, we have observed previously that the parties were and are in good faith, we hold that assessment of damages for appeal without merit are not proper. It is so ordered."

We note, too, that in Justice Haswell's concurring opinion he observes "tactical" reasons why State Farm did not litigate the rights and liabilities between the two defendants, Thompson (its insured) and Haggerty-Messmer (insured by St. Paul).

In the meantime and before our opinion cited above was filed on October 27, 1967, Thompson on April 18, 1967, filed the instant suit against State Farm alleging bad faith in handling the original tort suit. Trial was had by jury. Verdict was

returned for plaintiff in the amount of $76,830.03 and judgment was entered.

One other factor giving rise to a curious and complicated state of facts is that State Farm carried collision insurance on Welch's vehicle. So, State Farm insured Thompson through his father and also Welch, thus covering to some extent both vehicles involved. St. Paul, another insurance company, with the judgment against Thompson came into the act because of its insurance coverage of Haggerty-Messmer, Thompson's employer. In the first action, Haggerty-Messmer strenuously insisted that Thompson was not acting in the scope of his employment when the accident occurred. Yet, during the time of the lawsuit, Thompson received industrial accident benefit payments as a covered employee. While some of these background facts appear extraneous and irrelevant, they all are a part of a complicated picture where bad faith in a tort action was alleged. The various activities of the litigants, claims adjusters, investigators, examining doctors and lawyers involved are gone into in the evidence.

The pretrial order upon which the matter was finally submitted to the jury came with the following contentions of plaintiff:

"1. That State Farm Insurance Company did not exercise good faith, and was negligent and was guilty of bad faith toward Bruce Thompson, their insured, in failing to settle the law suit by Mr. Welch against Bruce Thompson within the $10,000.00 limits of the insurance policy because:

"a) It failed to accept a reasonable offer to settle the suit against Bruce Thompson which offer or offers were within the $10,000.00 limits of the policy.

"b) It knew, or should have known, that there was a likelihood that any verdict rendered for Welch would greatly exceed $2,000.00 or even $10,000.00 because of the severity of the injuries sustained by Mr. Welch.

"c) It knew, or should have known, that the evidence to be presented in the case would indicate that a defendant's verdict on the issue of liability was doubtful, and their claim of contributory negligence was a question of fact to be decided by the jury.

- 5 -

"d)   It did not give proper regard or considera-
tion to the recommendations of its trial counsel, Mr.
Bennett, who recommended that no offer be made in excess
of $2,000.00 for the reason that Mr. Bennett had failed
to provide John T. Anderson of State Farm as requested,
with the requisite medical information on Welch and on
his current activities.  And, that Mr. Bennett failed to in-
form Mr. Anderson as requested, of the position of co-
defendant, Haggerty-Messmer Co. as to their willingness
to contribute to any joint offer of settlement and as to
their demand that State Farm accept tender of the defense
of Haggerty-Messmer Co.  And, failed to provide Mr. Ander-
son with comprehensive evaluation and written reports
concerning all phases of this matter, though often requested.

"e)   Bruce Thompson demanded that State Farm, as
insurer, settle within the policy limits of $10,000.00.

"f)   It failed to inform Bruce Thompson of any of
the offers of settlement tendered by Mr. Welch and failed
to inform Bruce Thompson of any offers of settlement made
by it to Mr. Welch.

"It is further guilty of bad faith in that:

"a)   That it failed to properly investigate the
accident and failed to adequately prepare for trial.

"b)   It failed to make any reasonable offer or
counter offer of settlement of the suit against Bruce
Thompson, and failed to carry on negotiations for the
settlement of the claim of Mr. Welch.

"c)   It failed to give equal consideration to the
interests of Bruce Thompson, as compared to its own
and their respective hazards, and it failed to consider
fairly Bruce Thompson's liability for any excess judg-
ment in evaluating the offers of settlement within the
policy limits, or in negotiating for a settlement.

"d)   That it failed to give due consideration to
the applicable law.

"e)   That it failed to reasonably appraise and
evaluate the case from a settlement standpoint."

To these allegations basically, defendant entered a denial

and a defense that it had not received an offer to settle within

policy limits, nor an unequivocal demand to settle within policy

limits.

It is to be generally noted that under the policy of in-

surance issued by State Farm to Art Thompson, father of plaintiff,

State Farm obligated itself to pay on behalf of the insured all

sums which the insured shall become legally obligated to pay as

damages because of:

"(A)   bodily injury sustained by other persons * * *

"(a)   to defend any suit against the insured al-

leging such bodily injury * * * but the company may

- 6 -

make such investigation, negotiation and settle-
ment of any claim or suit as it deems expedient."

In addition to the foregoing, an amended complaint was filed
wherein plaintiff sought damages for mental pain and suffering
caused by the imposition of the excess judgment against him.
This matter was allowed to go to the jury and the jury returned
a verdict awarding him $750 for mental pain and suffering.
Appeal is also taken to this portion of the judgment. But, in
view of our disposition hereinafter, we need not discuss this.

Appellant State Farm presents ten issues for review. How-
ever, the determinative issues are but two, and they are inter-
woven. These issues are:

1. Were the findings of bad faith and negligence supported
by the evidence?

2. Was there a settlement offer within the limits of
State Farm's policy, which State Farm failed and refused to
accept?

First, the basic criteria for recovery in Montana in this
type of action was discussed by this Court in Fowler v. State
Farm Mutual Automobile Ins. Co., 153 Mont. 74, 78, 454 P.2d 76.
There we said:

"We think that excellent discussions of the applicable
law appear in three reported cases arising in Montana:
Fetter Livestock Co. v. National Farmers U.P.& C.Co.,
257 F.Supp. 4; Jessen v. O'Daniel, 210 F.Supp. 317; and
National Farmers Union Property & Casualty Co. v. O'
Daniel, 329 F.2d 60.

"In Fetter Livestock Co. v. National Farmers U.P.& C.Co.,
supra, 257 F.Supp. at p. 10, Judge Jameson discussed the
applicable rules as follows: * * *

"'It is well settled that "Error in judgment in not
settling a case within the policy limits is not in
itself sufficient to impose liability upon the insurer
for any recovery in excess of the limits; nor is the
mere fact that the insurer was unsuccessful in the trial
of the case sufficient to show that the defense was not
made in good faith." Jessen v. O'Daniel, supra (210 F.
Supp. at 325). On the other hand, "It has been held that
a policy of this type places a fiduciary duty on the
insurance company to look after the interests of the
insured as well as its own, thus requiring it to consider
fairly the insured's liability for the excess when evalu-
ating an offer of settlement within the policy limits.

Failure to do so is bad faith and renders the company liable for its breach of fiduciary duty in the amount of any judgment over the policy limits." National Farmers Union Property & Casualty Co. v. O'Daniel, supra. (329 F.2d at 64-65.)

"'In Jessen v O'Daniel this Court set forth relevant factors for determining whether an insurer acts in "bad faith" as follows:

"'Factors to be considered include (1) whether, by reason of the severity of the plaintiff's injuries any verdict is likely to be greatly in excess of the policy limits; (2) Whether the facts in the case indicate that a defendant's verdict on the issue of liability is doubtful; (3) Whether the company has given due regard to the recommendations of its trial counsel; (4) Whether the insured has been informed of all settlement demands and offers; (5) Whether the insured has demanded that the insurer settle within the policy limits; (6) Whether the company has given due consideration to any offer of contribution made by the insured. As a rule no one factor is decisive. All must be considered in determining whether the insurer acted in good faith.' (210 F.Supp. at 326-327.)"

The briefs of each party exhaustively analyze the evidence within the six criteria set forth above. Respondent Thompson reminds us of the rules on sufficiency of the evidence on review by quoting from Campeau v. Lewis, 144 Mont. 543, 398 P.2d 960, and Bernhard v. Lincoln County, 150 Mont. 557, 437 P.2d 377. We shall likewise analyze the evidence to determine whether or not there was substantial credible evidence, sufficient to be submitted to the jury on the issue.

Thompson at all times insisted on his own lack of negligence in the original accident. Thompson through his own lawyer, Mr. Nash, filed a counterclaim alleging negligence on the part of Welch. This counterclaim was dismissed before trial. The investigating highway patrol officer issued traffic citations to both drivers, Thompson for reckless driving and Welch for making an improper turn. Mr. Nash testified that he felt his client Thompson had a poor defense. After Mr. Nash's withdrawal as attorney for Bruce Thompson and after dismissal of the counterclaim, Thompson continued to assert in sworn testimony his lack of negligence and negligence on the part of Welch.

Counsel representing Thompson's employer Haggerty-Messmer also felt, as indicated by testimony and letters as exhibits,

- 8 -

that Thompson had a valid defense; and that Welch did not have a "cinch" case against Thompson on either the liability issue or the damage issue. Heretofore we called attention to the observation of this Court in Welch v. Thompson, supra, to the effect that the evidence was disputed. There we recognized that the verdict might have gone either way depending upon which evidence was believed. The jury verdict was 9 to 3.

Opposed to this is Thompson's efforts to highlight the apprehension, doubts, questions, and concern of various investigators and agents of State Farm in investigations and trial preparation on behalf of State Farm.

Referring back to the criteria set forth by this Court in Fowler and cases cited therein, it is clear that a policy of insurance of the type in question places a "fiduciary duty" on the insurance company "to look after the interests of the insured as well as its own." Thus when it came to evaluating settlement, the insurer was required to consider fairly the insured's liability for possible or probable excess judgment. We emphasize here the word "fairly", because, as pointed out in Fowler, a mere error in judgment or poor result at trial is not sufficient to establish a claim for damages because of bad faith.

We shall first assume that there was a valid offer of settlement within policy limits. The policy limits were $10,000 and there was a demand and an offer to settle for $9,500 on a covenant not to sue. It was obvious that Welch intended to keep the employer in the case and that State Farm's possible obligation in indemnity would remain. But assuming an offer, was there bad faith in refusing it under the six criteria of Fowler?

No. 1. Was a verdict likely to be greatly in excess of policy limits? In view of Welch's admitted previous disability, none of the attorneys before trial, with one notable exception, evaluated the case very highly. Except for testimony of Mr. Gary, one of Welch's counsel, no one seemed to anticipate a

large verdict on damages, if liability was proven. Mr. Gary's testimony is a subject of another issue on this appeal and will not be discussed. However, in our analysis criterion No. 1 is not satisfied.

No. 2. Under the facts, defendant Thompson insisted that plaintiff Welch was negligent. There was evidence of failure to signal properly, changing traffic lanes and receiving a traffic citation from the highway patrol. Under the instructions given in the Welch v. Thompson, supra, trial, there might well have been a defense verdict. The facts there were disputed. Thompson's counsel now argues that factors, such as Thompson's receiving a traffic summons, his speed, the cancellation of his insurance coverage, his failure to observe other cars following Welch, and other factors so clearly indicate liability that his liability was clear. To make such an assertion now is an example of 20-20 hindsight vision. During the highly contested trial, a motion for directed verdict on liability was made, but denied by the trial judge. The instructions, as commented before, would have allowed a verdict for defendant. We find that criterion No. 2 was not satisfied.

No. 3. Did the insurance company give due regard to the recommendations of its counsel? It is clear that attorney Bennett never evaluated the case in excess of $2,000, never asked for more authority, and never suggested more. The company at all times followed his recommendations.

Thompson's brief on this point suggests a "history" on the part of attorney Bennett of taking law suits to trial rather than seeking to settle them. From this, Thompson develops an argument to the effect that the company should not have relied on its counsel's advice. Perhaps insurance companies should question their counsel's advice, but to put a connotation of bad faith on following counsel's advice does not impress us. We find that criterion No. 3 was not met.

No. 4. Was the insured informed of all demands and offers? Obviously he was informed of the $9,500 offer for a covenant not to sue. As to another offer of a $15,000 settlement by both defendants during trial, there is a dispute in the evidence and thus an issue of fact. Viewing the facts favorably to the plaintiff, criterion No. 4 would be satisfied.

No. 5. Did the insured demand that the insurer settle within policy limits? While there is some dispute in the testimony concerning whether Thompson made any meaningful demand, we need not go into details. It was disputed but there was evidence sufficient, if other matters were proven, to raise a fact issue. Thus, criterion No. 5 would be satisfied.

No. 6. Did the company give due consideration to offers of contribution by Thompson? Thompson made no offer of contribution. He would rely on his employer's offer of contribution through its insurer St. Paul. Attorney O'Connell apparently suggested a split on contribution to an offer of settlement during trial of $15,000 made by Welch's attorney Landoe. The split would have been $8,500 due from the employer Haggerty-Messmer and $6,500 due from Thompson's insurer State Farm. But, even here, attorney O'Connell never agreed to release Thompson under the theory of indemnity. Criterion No. 6 was not met.

In our foregoing discussion of the six criteria, we found that only two, Nos. 4 and 5, raised fact questions. These two, concerning whether Thompson was informed of all demands and offers and whether Thompson, in fact, made any meaningful demand are not enough, standing by themselves, to establish bad faith. They are but two elements which standing by themselves are not bad faith.

Thus, of the six criteria set out in Fowler, Nos. 1,2,3 and 6 were simply not met. There is no question really on the adequacy of the investigation by State Farm. That mistakes, omissions, or misjudgment may have been made is apparent; but these do not make bad faith. Bad faith was instructed by the

trial judge as meaning "a willful failure to respond to plain and well-understood obligation."

Just as in Fowler, after reviewing all of the evidence, even that which is otherwise questioned as issues on this appeal and to which we have not directed our attention, and taking it as a whole, there was a lack of proof of bad faith or negligence amounting to bad faith and the issue should not have been submitted the jury.

Hereinbefore, we assumed that a valid offer of settlement within policy limits was made. The offer of settlement was for a covenant not to sue. It would not and was not intended to exonerate Thompson because Thompson's employer, Haggerty-Messmer was still a defendant. Haggerty-Messmer's right of indemnity against Thompson remained so Thompson's possible liability remained almost the same. Had State Farm accepted that offer, it would not have been protecting Thompson under the circumstances.

Even during the trial, when contribution by St. Paul Fire and Marine Ins. Co. was offered, there was never an agreement to release Thompson fully; although it is true the counsel testified that he assumed he might have. Counsel did not communicate this to State Farm.

Thus, no offer or demand for settlement within policy limits was made.

Accordingly, the judgment is reversed and the case dismissed, each party to pay its own costs.

Wesley Castles
Associate Justice

- 12 -

We Concur:

_James T. Harrison_
Chief Justice

_Gene B. Daly_

_Frank I. Haswell_

Associate Justices.